##### IN THE

## SUPERIOR COURT OF JUDICATURE,

##### FOR THE

## COUNTY OF CHESHIRE, JULY TERM,

##### A. D. 1837.

---

## REUBEN DODGE and a. *vs.* REBECCA GRISWOLD and als.

A bill in equity may be sustained in this state to set aside a conveyance of real estate made with intent to defraud creditors.

And a creditor who has commenced a suit against the debtor, and caused such real estate to be attached by virtue of his original writ, has a title to maintain such a bill as soon as the debtor has been defaulted in the suit against him.

THIS was a bill in equity. The plaintiffs alleged that, having just claims against Rebecca Griswold, they brought a suit against her in the name of Reuben Dodge, and on the 13th October, 1834, caused a certain tract of land, lying in Walpole, and belonging to the said Rebecca, to be attached by virtue of the original writ in that suit—that the said writ was returned to the court of common pleas in this county at April term, 1835, when and where it was returnable, and the action duly entered and continued to the next October term, when the said Rebecca was defaulted—that on the 29th September, 1834, the said Rebecca conveyed the said land to G. S. Griswold, one of the defendants, with intent to defraud her creditors—and that on the same 29th September, 1834, the said G. S. Griswold conveyed the same land to J. Griswold in fee and in mortgage, to secure

the payment of $700, when in truth nothing was due. The said J. Griswold was made a defendant.

The bill was filed on the 12th April, 1836, and prayed a discovery and relief.

There was a demurrer to the bill.

*Wilson* and *Chamberlain*, in support of the demurrer, contended that a bill in equity could not be maintained to set aside a fraudulent conveyance, there being an adequate remedy at law.

But if the court should be of opinion that a bill might be maintained in such a case, these plaintiffs had shown no title to maintain such a bill.

*Vose* and *Hale*, for the plaintiffs.

RICHARDSON, C. J. delivered the opinion of the court.*

It is insisted in this case, that the bill cannot be maintained, because the plaintiffs have an adequate remedy at law.

But we are of opinion that this objection to the bill is not well founded. Every one, who is at all acquainted with the subject, knows that in cases of fraudulent conveyances of real estate, the remedy at law is not complete and adequate for all the purposes for which a plaintiff may claim relief; and bills in equity are now sustained in such cases every where. 2 *Mason* 252, *Bean* vs. *Smith ;* 1 *Equity Cases Ab.* 77, *pl.* 13; 6 *Vesey* 788, *Mountford* vs. *Taylor ; Cooper's Pl.* 140.

The next question is, whether the plaintiffs have shown in their bill any title to the relief they ask ?

By the common law the lands of a defendant were bound by the judgment, and the plaintiff might have had his execution of lands which the defendant had at the time of the

---

* PARKER, J. did not sit in this cause.

judgment or afterwards. *Comyn's Digest,*" *Execution," D.* 1.; 2 *Tidd's Prac.* 849.

The judgment created a lien upon the lands in favor of the creditor, giving him a present subsisting right to have his execution satisfied by the land—a right that could not be defeated by any subsequent conveyance by the debtor, nor by any judgment afterwards rendered in favor of other creditors.

And in England and in New-York, where a judgment is a lien upon lands, a creditor has a right to file a bill in equity to set aside fraudulent conveyances of land, as soon as he has obtained a judgment which is a lien upon the property. 2 *Paige R.* 54, *The Mowhawk Bank* vs. *Atwater;* 6 *Vesey* 788, *Mountford* vs. *Taylor;* 4 *Johns. C. R.* 671, *Brinkerhoff* vs. *Brown;* 2 *Mason* 252, *Bean* vs. *Smith;* 3 *Johns. C. R.* 481, *Read* vs. *Livingston.*

If a plaintiff seeks relief in equity in regard to personal estate, he must show an execution giving him a lien on the goods and chattels, which he has pursued to every available extent at law before he can resort to equity for relief. 4 *John. C. R.* 671, *Brinkerhoff* vs. *Brown, and Ibid.* 682, *Williams* vs. *Brown; and Ibid.* 687, *M'Dermutt* vs. *Strong;* 3 *Paige* 320, *Clarkson* vs. *DePeyster;* 1 *Paige* 308; 1 *Equity Cases Abr.* 77, *pl.* 14; *Cooper's Pl.* 149.

It is insisted, on behalf of these plaintiffs, that an attachment by virtue of an original writ is equivalent to the lien created by a judgment in England and New-York, and that their attachment of the land of their debtor constitutes a title sufficient to enable them to maintain this suit, and have any conveyance made by their debtor with a view to defraud creditors, set aside.

But let us consider what title an attachment gives to a creditor to maintain such a suit.

An attachment binds the land in such a manner that the creditor will have a right to hold all the interest which the debtor had at the time of the attachment, to satisfy his debt,

provided he obtain judgment in that suit and within thirty days after judgment sue out execution, deliver the execution to an officer, and cause the land to be seized by virtue of the execution. The attachment gives no present interest in the land—no title passes—no right of possession is acquired—no title to have the land applied to satisfy the claim. Whether the creditor ever will have a right to apply the land in satisfaction of his claim rests wholly in contingency. If he fail to obtain judgment, or to have his extent commenced within thirty days after judgment, his title under the attachment is lost. His claim upon the land is very little, if any thing, more than a mere expectancy; a probability of a future title depending upon events that may never happen. It is very little better than the expectation of an heir, or a legatee, in the life time of the ancestor or testator.

And in every case where the plaintiff in a bill in equity shows only a probability of a future title, upon an event that may never happen, he has no right to institute a suit assuming it. *Mitford's Pl.* 213; *Cooper's Pl.* 171; 1 *Vernon* 105; 1 *Equity Cases Abr.* 234, *pl.* 3; 6 *Vesey* 260, 261; 2 *Story's Com. on Equity* 722, *sec.* 1511; 15 *Vesey* 135, 136; 2 *John. C. R.* 144, *Wiggin* vs. *Armstrong.*

If, then, nothing further appeared in this bill than that the plaintiffs had caused the land to be attached, we are of opinion that the bill could not have been sustained.

But in the suit against Rebecca Griswold she has been defaulted, and this is an admission of record that the plaintiffs have a just claim against her in that suit. And upon this admission they have at least *prima facie* a right to enter up judgment against her, sue out execution, and extend the same upon the lands attached. They had, then, at the time they filed their bill *prima facie* a present subsisting title and right to have the land which they had attached applied in satisfaction of the debt demanded in that suit. And this seems to us to be equivalent to the lien created by a judgment at common law. It has been said that the judgment

may be arrested notwithstanding the default. This is true. But in cases of a lien by judgment at common law, it may be with equal propriety objected that the judgment may be reversed upon a writ of error. There is, then, no more uncertainty in the title of these plaintiffs than there is in the title of one who has a lien by judgment at common law.

And we are, on the whole, of opinion, that the plaintiffs have shown a sufficient title to maintain their bill, and that the demurrer must be overruled.